NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| WILLIAM CASRELL, | : | |
| | : | Civil Action No. 14-6713 (BRM) (LHG) |
| Plaintiff, | : | |
| v. | : | **OPINION** |
| BOARD OF FREEHOLDERS, et al., | : | |
| Defendants. | : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendants Officer Steven Young, Investigator William Beckenstein and Officer Jeremy Auguste's[1] unopposed[2] motion for summary judgment. (ECF No. 46.) Having reviewed the filings submitted in connection with the motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons sets forth below, and for good cause appearing, Defendants' motion for summary judgment is **GRANTED**.

**I. BACKGROUND**

**A. Factual Background**

This action arises out of an incident that occurred on February 18, 2014, while William Casrell ("Plaintiff") was a pre-trial detainee at the Monmouth County Correctional Institution

---

[1] The case caption on the Court's electronic docket lists this defendant's name as "C.O. Augusta", however Defendants provided the Court with the correct spelling of Officer Jeremy Auguste's name. (*See* ECF No. 46-2 at 6.)

[2] Shortly after the motion was filed, Plaintiff notified the Court of his transfer to Bayside State Prison. It appearing that Plaintiff may not have received notice of the motion, on May 1, 2018, the Court ordered Defendants to re-serve the Plaintiff and allowed Plaintiff additional time to respond on the motion. To date, Plaintiff has not filed an opposition or otherwise responded.

("MCCI"). (Compl. (ECF No. 1) ¶ 6; Defs.' Statem. of Mat. Facts Not in Dispute (ECF No. 46-1) at 2.) According to Defendants, Plaintiff was ordered transferred within the facility's housing units earlier that day and was disconcerted that he was not able to pack his own belongings. (ECF No. 46-1 at 3.) Plaintiff contends the housing transfer was retaliation for his refusal to cooperate in an investigation against gang members. (Pl.'s Resp. to Interrogs. (ECF No. 38) at 23.) Plaintiff alleges the incident in question commenced when Officer Beckenstein told him to "shut the fuck up" and Plaintiff replied, "shut the fuck up." (*Id.*) Plaintiff further alleges that "Beckenstein ran down on me from behind." (*Id.*) Plaintiff described himself as "already on high alert" from his conversation with prison officials asking him to assist in a gang investigation earlier that day. (*Id.*) Plaintiff alleges he then "turned around and through [sic] my hands up in a fighting stance and told [Beckenstein] not to run down on me." (*Id.*) Plaintiff submits that while Officer Auguste tried to handcuff him, Plaintiff "turned [his] head slightly in a non-threatening" manner, when he was slammed into a desk. (*Id.*) Plaintiff initially submitted that he then grabbed the table leg and table top "to keep from getting hurt" while the officers struck him repeatedly. (*Id.*) Plaintiff later admitted in his answer to Defendant's interrogatories that he held on to the table to "prevent the officers from gaining control over [him]." (ECF No. 46-7 at 8.) Plaintiff alleged that the officers "slammed [his] face into a plexiglass window (*Id.* at 21.) He further alleged that the impact of his head against the plexiglass caused one of his teeth to shatter. (*Id.* at 22.)

Following the incident, the officers completed a "Use of Force Report." (ECF No. 46-1 at 5, ECF No. 46-2 at 55-61.) This was followed up by a "Supervisors Report" which included a description of the writer's observation of the video footage of the incident, completed by Sergeant Goldstein of MCCI. (*Id.*) The report concluded the officers used appropriate force in response to Plaintiff's disruptive behavior and subsequent resistance to being handcuffed. (*Id.*) Lieutenant

Richard Vilacoba of MCCI concurred with Sergeant Goldstein's conclusion. (*Id.*) Security Captain John Kolodie also concurred with the result. (*Id.* at 6.)

MCCI charged Plaintiff with two disciplinary infractions, "disruptive conduct" and "assaulting any person," both of which he admitted. (ECF No. 46-4 at 47-53.) Plaintiff also signed a "waiver of further action" in conjunction with the admission of the disciplinary charges. (*Id.*, ECF No. 46-6 at 79-80.) Criminal charges were also filed against Plaintiff in the Superior Court of New Jersey. (ECF No. 46-1 at 6.)

During Plaintiff's guilty plea colloquy in the Monmouth County Superior Court, Plaintiff described the incident with the officers as follows:

> Q: At some point while you were in the pod, officers began to – one officer began to make a demand of you and began to talk to you, is that correct?
> A: Yes.
> Q: And you understand as an inmate you have to obey what that officer is directing you to do, is that right?
> A: Yes.
> THE COURT: What'd the officer tell you to do?
> THE DEFENDANT: Put my hands behind my back.
> THE COURT: Okay:
> BY MS. FRIEDMAN:
> Q: And he asked you to put your hands behind your back and he was planning on escorting you to a different pod. Is that your understanding?
> A: Yes.
> Q: You felt that there was no reason to take you to the other pod. Is that correct?
> A: Yes.
> Q: At some point, that verbal altercation became physical. Is that right?
> A: Yes.
> Q: And there were multiple officers involved?
> A: Yes.
> Q: And at some point those officers and you- they put- knocked you onto a table. Is that correct?
> A: Yes.
> Q: And you were moving your arms and your legs. Is that correct?
> A: Yes.

> Q: During that altercation?
> A: Yes.
> Q: And you understand that during that altercation that you physically came in contact with those officers. Is that correct?
> A: I'm gonna say that I was resisting but I didn't hit anybody.
> Q: You didn't intentionally hit anyone, is that fair to say?
> A: That I know of, no.
> Q: Okay, but you do admit to physically resisting, do you stipulate that you came in contact physical with those officers?
> A: I didn't hit anybody.
> MR. HECK: May I ask a question?
> I mean, the officers has their hands on you and they were trying to get you to a position a way you were resisting, right?
> THE DEFENDANT: Yeah.
> MR. HECK: And as a result of it, one of them ended up straining his shoulder, right?
> THE DEFENDANT: Yeah.

(ECF No. 46-7 at 36.)

**B. Procedural Background**

In the wake of the incident, Plaintiff wrote a letter to the Monmouth County Prosecutor's Office seeking to have charges brought against the officers. (ECF No. 46-4 at 71; ECF No. 38 at 13.) The Monmouth County Prosecutor's Office closed the file because the evidence did not corroborate Plaintiff's allegations. (ECF No. 38 at 14.) Plaintiff admits that he did not appeal the decision. (*Id.*)

On October 28, 2014, Plaintiff commenced this action pursuant to 42 U.S.C. § 1983, alleging "extreme excessive force" by defendants. (ECF No. 1 at 6.) Plaintiff is seeking $51 billion in compensatory damages. (*Id.*) The Court dismissed Plaintiff's claims against defendants Board of Freeholders, MCCI and Marion Masnick without prejudice. (ECF No. 17.) Defendants now move for summary judgment. (ECF No. 46.)

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002). "Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3rd Cir. 1991) (citing *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir.), *cert. denied*, 474 U.S. 1010 (1985)); *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party bears the burden of persuasion at trial, summary judgment is appropriate only if the evidence is not susceptible to

different interpretations or inferences by the trier of fact. *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex*, 477 U.S. at 330 (Brennan, J., dissenting). Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

**B. Section 1983 Actions**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Therefore, to state a claim for relief under Section 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

**III. DECISION**

Defendants raise three arguments in support of their motion for summary judgment. (*See* ECF No. 46-2.) First, Defendants argue Plaintiff failed to exhaust all administrative remedies. (*Id.* at 18-22.) Second, Defendants argue summary judgment should be granted in their favor because Plaintiff pleaded guilty to a criminal offense in connection with the incident central to this § 1983 complaint. (*Id.* at 26-27.) Lastly, Defendants argue summary should be granted in their favor because the officers' conduct is protected by the doctrine of qualified immunity. (*Id.* at 28-32.)

The Prison Litigation Reform Act of 1995 ("PLRA") requires that inmates exhaust administrative remedies prior to bringing suit challenging prison conditions. *See* 42 U.S.C. § 1997e(a). The statute provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.*

The exhaustion requirement is meant "(1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits." *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004). The United States Supreme Court has unequivocally rejected discretionary exceptions to this statutory exhaustion mandate. *See Ross v. Blake*, 136 S.Ct. 1850, 1856-57 (2016). Moreover, because exhaustion is an affirmative defense it is incumbent on the defendant to plead and prove. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

With respect to an administrative grievance, the MCCI "Inmate Handbook" in effect during the relevant time period, provides as follows: "You should exhaust all administrative grievances and appeal procedures before applying to outside agencies." (ECF No. 46-4 at 39.) Moreover, it provides that the grievance process should be conducted in the following manner:

> a. The grievance procedure begins with the Officer. Should the Officer and Supervisor not be able to satisfy the grievance, the inmate will be given form ADM-67, Inmate Grievance Form.
> b. The inmate will complete the grievance form, keep the pink copy and drop it in the grievance box located on the housing unit.
> c. If necessary assistance will be given by the Pod Officer in preparing a grievance form.
> d. The Program Captain or his designees will review the grievance and return a response on the yellow copy.

(*Id.* at 40.)

Here, Plaintiff sent a letter to the Internal Affairs Unit of MCCI describing the events of February 18, 2014. (ECF Nos. 46-3 at 4, 46-4 at 63.) This letter named Officers Young, Beckenstein and Usted. (ECF No. 46-4 at 63.) He followed that letter up with a letter to the Monmouth County Prosecutor's Office inquiring about "the official status on the ongoing investigation concerning me and Officer C.O. Young and my claims of excessive force." (ECF

8

Nos. 46-3 at 4, 46-4 at 65.) During the course of the instant litigation, the parties engaged in discovery that included interrogatories and Plaintiff's deposition. In his answers to Defendants' interrogatories, Plaintiff admitted that he read the MCCI "Inmate Handbook"; he objected to Defendant's interrogatory number 15 that asked whether he failed to submit a grievance form for the conduct alleged in the instant matter; and he admitted that he did not appeal the "decision by Internal Affairs and/or the Monmouth County Prosecutor's Office." (ECF No. 38 at 10, 13-14.) Additionally, in a voluntary statement provided to the Monmouth County Prosecutor's Office on August 6, 2014, during their investigation of Plaintiff's excessive force allegation, the following exchange occurred:

> Q: What would you like to see happen in regards to this matter?
>
> A: To be honest, I have a lawsuit that I'm waiting to come back against Monmouth County Jail. And, really just wanna be financially compensated for the duress, stress, oppression and depression and the use of excessive force that they put me under for no reason, the officers of the Monmouth County Correctional Institution. That's what I want to see happen."

(ECF No. 46-4 at 71.)

The MCCI has instituted a process by which inmates can seek remedy for grievances. Here, Plaintiff, by his own admission has not met the correctional institution's requirements. Defendants show that Plaintiff failed to exhaust his administrative remedies. The Court will grant summary judgment for the Defendants on the basis of Plaintiff's failure to exhaust his administrative remedies. *See Fortune v. Bitner*, No. 07-3385, 2008 WL 2766156, *3 (3d Cir. July 17, 2008).

Defendant Officer Jeremy Auguste also argues that summary judgment should be granted in his favor because Plaintiff did not name him in his administrative filings. (ECF No. 46-2 at 21.) "Exhaustion is not *per se* inadequate under the PLRA when an individual later sued was not named

9

in the grievance." *Jones*, 549 U.S. at 200. "The applicable procedural rules that a prisoner must properly exhaust are defined not by the PLRA, but by the prison grievance process itself. *Id.* (internal quotation marks and citations omitted). Nonetheless, the Court need not reach this argument because Plaintiff failed to exhaust his administrative remedies before bringing this action as required by the PLRA.

## IV. CONCLUSION

Accordingly, Defendants' Motion for Summary Judgment (ECF No. 46) is **GRANTED**. An appropriate order will follow.

Dated: December 28, 2018

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**